IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CURTIS JAMES McGUIRE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:17-CV-171-Z |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

Before the Court is the *Petition for a Writ of Habeas Corpus by a Person in State Custody* filed by petitioner CURTIS JAMES McGUIRE challenging the constitutional legality or validity of his state court convictions and sentences. For the following reasons, petitioner's habeas application should be DENIED.

I.
STATEMENT OF THE CASE

It appears that in April 2010, the Texas Department of Family and Child Protective Services (CPS) initiated a medical neglect investigation involving A.P., petitioner's 12-year-old stepdaughter. The file of this investigation is not before the Court, and there is no definitive indication in the record that this investigation was in any way related to subsequent events that form the basis of the criminal investigation underlying the state prosecutions and convictions that are the subject of this federal habeas proceeding. However, the undersigned notes this April 2010 investigation as a complaint that petitioner raises in this proceeding. *See infra*, section II.

On September 27, 2010, K.P., petitioner's 10-year-old stepdaughter, accused petitioner of engaging in inappropriate sexual conduct with A.P. [ECF 24-11 at 160; 26-11 at 165]. CPS initiated an abuse investigation into the accusations and, on September 28, 2010, A.P. was examined by a sexual assault nurse examiner. During the history portion of the exam, A.P. admitted she and petitioner had been having a sexual relationship, advising the last occurrence was just before the 2010 school year started. [ECF 26-14 at 169]. A.P. did not indicate to the nurse examiner that she was having sexual relations with anyone else. [*Id*.] A.P. also stated petitioner told her he would have to go to jail if she told anyone of their sexual relationship and expressed her concern that petitioner would lose his job and not be able to provide for the family if he went to jail. [ECF 26-14 169-70]. The physical portion of the exam revealed trauma to A.P.'s genital area consistent with multiple penetrations of the vaginal vault. [*Id*.].

On September 28, 2010, petitioner was arrested for the felony offense of aggravated sexual assault of a child. [ECF 26-11 at 161-62]. On October 4, 2010, A.P. gave a statement recanting her previous statements to CPS and the examining nurse, exonerating petitioner, and indicating any sexual activity in which she had engaged had been with ex-boyfriends. [ECF 26-14 at 125]. On October 8, 2010, petitioner was released on a $20,000 bond with the restriction that petitioner have no contact with A.P. or K.P. or their mother (petitioner's wife) or be within 500 feet of their residence. [ECF 4-2 at 16]. On October 19, 2010, K.P., the victim's sister and initial outcry witness, also gave a statement recanting her previous statements, exonerating petitioner, and indicating her prior statements inculpating petitioner were a result of intimidation and threats by her maternal aunt and grandmother. [ECF 26-14 at 126-27]. On March 8, 2011, an Amarillo Police Department (APD) officer interviewed two juvenile males identified as A.P.'s ex-boyfriends, both of whom denied improper sexual contact with A.P. [ECF 26-14 at 178].

On March 9, 2011, petitioner was charged by Indictment in Potter County, Texas, with the

1st degree felony offense of aggravated sexual assault of a child. *State v. McGuire*, No. 62,375-A.

The Indictment alleged petitioner on or about August 1, 2010:

> [D]id then and there, intentionally or knowingly cause the penetration of the female sexual organ of [A.P.], a child who was then and there younger than 14 years of age, by the Defendant's sexual organ.

[ECF 26-14 at 214]. Thereafter, the case lay dormant for approximately two (2) years.

On May 8, 2013, CPS re-opened its investigation after authorities learned A.P., then age 15, was possibly pregnant. [ECF 4-3 at 1]. On May 15, 2013, the APD reopened its investigation into the charges against petitioner based on a CPS report. [ECF 26-14 at 168]. On July 2, 2013, an APD officer questioned A.P. and her mother concerning whether petitioner had been to the house or around the children in violation of his 2010 bond conditions and provided the recording of the conversation to the State prosecutor. [ECF 26-4 at 85-98]. On July 13, 2013, A.P. gave birth. On July 16 and 17, 2013, a CPS investigator interviewed A.P., tape recording the interviews.

On July 17, 2013, the State filed a motion to increase petitioner's bond to $1,000,000 due to petitioner violating the conditions of his bond by continuing to have both contact and sexual contact with A.P. [ECF 26-12 at 39-40; 26-14 at 106-07]. On July 18, 2013, the state trial court conducted a hearing on the State's motion to increase petitioner's bond. At the hearing, A.P. testified under oath that petitioner had not been around her or their house and was not the father of her child. [ECF 26-12 at 55]. However, A.P.'s mother testified under oath that petitioner had, in fact, been around their house and that she believed he could be the father of A.P.'s child. [ECF 26-12 at 56; 26-14 at 116]. Thereafter, the trial court continued the hearing. After the hearing, an APD officer conducted a recorded interview of A.P. wherein A.P. detailed her sexual contact with petitioner before and after the Indictment against him and provided the recording to the State prosecutor. [ECF 26-4 at 91].

On July 24, 2013, A.P.'s baby was determined to be petitioner's child through positive

DNA testing conducted by the University of North Texas Health Science Center. [ECF 26-12 at 95-97].

On July 25, 2013, the state trial court continued the previous hearing on the State's motion. [ECF 26-14 at 71-104, 219]. At the hearing, the CPS investigator testified A.P. told him, during the recorded interviews on July 16 and 17, 2013, that petitioner resumed having sexual relations with her approximately two weeks after being released on bond in October 2010, and continued to do so weekly until she became pregnant in October 2012. [*Id*. at 74-83]. After the trial court overruled defense counsel's objection on the basis of a Confrontation Clause violation, the APD officer, who was present at the July 18, 2013 hearing and conducted the interview of A.P. thereafter, testified as to the content of A.P. and her mother's testimony at the July 18, 2013 hearing, as well as to the content of the recorded interview he had with A.P. after the hearing wherein A.P. detailed her sexual relationship with petitioner before and after he was released on bond. [*Id*. at 84-101]. The state trial court thereafter granted the State's motion and increased petitioner's bond to $150,000. [ECF 26-12 at 45; 26-14 at 119, 219]. Petitioner was unable to make this increased bond and, consequently, remained incarcerated after his surrender.

On August 21, 2013, petitioner was charged by Indictment in Potter County, Texas, with the 2nd degree felony offense of sexual assault of a child. *State v. McGuire*, No. 67,654-A. The Indictment alleged petitioner, on or about October 6, 2012 (the approximate date of conception of petitioner's child):

> [D]id then and there intentionally or knowingly cause the penetration of the sexual organ of [A.P.], a child, by his sexual organ.

[ECF 26-14 at 207].

On September 18, 2013, the State filed a notice of its intent to consolidate the sexual assault case with the previous aggravated sexual assault case for prosecution as arising out of the same

criminal episode so as to allow the trial court to stack the sentences assessed in the cases.[1]  [ECF 26-12 at 116].  In August 2013, the prosecutor offered petitioner 40-year and 20-year concurrent sentences for the charged offenses, which defense counsel negotiated down to a 25-year and 20-year concurrent sentences offer.  [ECF 26-14 at 152-54, 159; 27-7 at 72].  When petitioner rejected the State's offer, petitioner's case was set for trial but continued numerous times.  [ECF 4-4 at 43, 66].

On May 7, 2015, pursuant to a plea bargain agreement, petitioner entered pleas of guilty to both the aggravated sexual assault offense charged in Cause No. 62,375-A and the sexual assault offense charged in Cause No. 67,654-A.  [ECF 26-14 at 219; 27-7 at 92].  The state trial court found petitioner guilty of both offenses as alleged in the Indictments and assessed petitioner's punishment at 23 years confinement in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), as recommended by the prosecution for the aggravated sexual assault offense, and 20 years confinement in TDCJ-CID for the sexual assault offense, said sentences to run concurrently.  After noting petitioner had waived his right to appeal, the trial court signed Judgments that same date.  [ECF 26-14 at 205, 208, 216-17, 219; 27-11 at 39-41, 44].  Petitioner did not file a direct appeal of either conviction or sentence with the appropriate state appellate court.

On April 25, 2016, petitioner placed a *Motion for Out-of-Time Appeal* in the state prison mailing system to the state trial court.  [ECF 4-2 at 1-6].  In his motion, although acknowledging he had waived his right to appeal his convictions and sentences, petitioner argued a "conflict occurred" between petitioner and his defense attorney "immediately following the plea bargain signing" that prevented petitioner "from communicating to or through the defense attorney" during

---

[1]Texas Penal Code § 3.03(b)(2)(A) provided that if the accused was found guilty of more than one offense arising out of the same criminal episode, the sentences may run consecutively if each sentence is for a conviction of an offense, as relevant here, under sections 22.011 and 22.021 of the Texas Penal Code.

the 30-day appellate period.  Petitioner maintained this "conflict" and lack of communication resulted in petitioner failing to file a timely appeal of his convictions and sentences through his counsel.  Petitioner contends the "conflict" that prevented communication with counsel also precluded petitioner from utilizing the jail law library and thus foreclosed his opportunity to file any *pro se* appeal or other motions during the appellate period.  Petitioner averred his legal inexperience prevented him from filing the motion for an out-of-time-appeal with the trial court in a timely manner.  It is unclear when the district clerk received and filed petitioner's motion. However, on May 3, 2016, the state trial court denied petitioner's motion to file an out-of-time appeal noting that not only was petitioner's felony conviction final, the trial court, as a district court rather than an appellate court, did not have any authority to grant an out-of-time appeal. [ECF 4-2 at 13; 26-14 at 190].

On September 20, 2016,[2] petitioner purportedly placed state applications for habeas corpus relief in the state prison mailing system challenging his convictions, such applications being received and file-stamped by the Potter County District Clerk on September 22, 2016.  *In re McGuire*, Nos. 85,938-01, -02 [ECF 26-14 at 8-31; 27-11 at 6-29].  By his state habeas applications, petitioner alleged, *inter alia*, prosecutorial misconduct for failing to disclose to the defense the counseling reports from the April 2010 CPS medical neglect investigation, which he contends were exculpatory with regard to the later sexual assault charges brought against him, and that he was denied effective assistance of trial counsel for failure to convey to petitioner a 15-year plea offer from the state prosecutor.  [*Id*.].

On October 19, 2016, the state trial court ordered the state prosecutor and defense counsel to submit affidavits to the court addressing petitioner's state habeas allegations.  [ECF ECF 26-14

_____

[2]Although signed September 20, 2016, the transmittal envelopes were post-marked September 19, 2016 [ECF 26-14 at 32; 27-11 at 30].

at 211-12]. On October 20, 2016, trial counsel signed an affidavit wherein he averred he never exerted any pressure on petitioner to accept the State's plea offers, that after A.P. became pregnant petitioner acknowledged in a letter to counsel that the "whole situation [was his] fault," and that petitioner was "rational during the plea and he knew exactly what he was doing," and argued "there is no evidence … anywhere in the record that [petitioner] did not knowingly and voluntarily enter into the plea bargain agreement." [ECF 26-11 at 100-02]. On January 23, 2017, the State prosecutor signed an affidavit averring her file notes did not reflect a 15-year offer, that she did not recall making, in writing or orally, any lower offer than the 23-year/20-year offer accepted by petitioner, and that she felt petitioner deserved much higher prison sentences than she offered but offered the 23-year/20-year sentences given concerns over the victim's well-being. [ECF 26-11 at 98-99]. The prosecutor further avowed any CPS reports that were part of the prosecution file would have been made available to defense counsel as a result of the State's open file policy, and that if she failed to correct any errors in the police reports it was because any misstatements were not material and did not influence her prosecution of the case. [*Id.*].

On March 21, 2017, the state district court entered *Findings of Fact and Conclusions of Law* recommending the judgments in both causes be affirmed. [ECF 26-11 at 86-97; 27-8 at 151-162]. The district court found, *inter alia*, that the State disclosed its entire case file to the defense, that as of July 2013, any CPS reports had not been turned over to the State, but that petitioner's counsel was aware that the reports were possibly discoverable directly from CPS [ECF 26-11 at 86-97; 27-8 at 151-62]. The state district court concluded petitioner had presented no evidence that the State had possessed any CPS documentation or school records and had "failed, neglected, or secreted any such records" from the defense. [ECF 26-11 at 96; 27-8 at 161]. On March 31, 2017, the district clerk transmitted the supplemental record to the Texas Court of Criminal Appeals (TCCA), said record being received and filed on April 3, 2017. [ECF 26-11 at 3].

On March 31, 2017, petitioner mailed a "Reply in Opposition" to the trial court's *Findings of Fact and Conclusions of Law*, said objections being received and filed of record on April 5, 2017.  [ECF 4-5 at 6-26].  On May 10, 2017, the district clerk transmitted the second supplemental record, containing petitioner's "Reply in Opposition" to the TCCA, said record being received on May 15, 2017.  [ECF 26-13].  On May 17, 2017, the TCCA denied both of petitioner's state habeas applications without written order on findings of the trial court without a hearing.  *In re McGuire*, No. 85,938-01, -02.  [ECF 26-2, 26-15].

On June 12, 2017, petitioner mailed a letter to the TCCA noting the delay in the district clerk's transmittal of his objections to that court, and arguing the TCCA "did not have adequate enough time to consider [petitioner's] objections and exhibits presented" and thus petitioner "was denied a full and fair opportunity at this critical stage in the process."  [ECF 4-4 at 12-13].  On June 14, 2017, the TCCA received petitioner's letter and filed it as a "Suggestion to Reconsider on the Court's Own Motion."  On June 23, 2017, the TCCA denied petitioner's suggestion without written order.  [ECF 4-4 at 14].

On August 16, 2017, the state trial court entered a Nunc Pro Tunc Judgment of Conviction in the sexual assault case (Cause No. 67,654-A) to reflect the age of the victim at the time of the offense was "14 years" rather than "12 years."  [ECF 29 at 28-29].

On August 30, 2017, petitioner purportedly placed the instant federal application for habeas corpus in the prison mailing system.  [ECF 3 at 10].  Petitioner's application was received by this Court on September 5, 2017, at which time it was file-stamped and a federal habeas corpus proceeding opened.  [ECF 3 at 1].

## II.
## PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United

States for the following reasons:

1.    At the July 25, 2013 continued pre-trial hearing to modify petitioner's bond, petitioner was denied his constitutional right to confront witnesses against him, which resulted in petitioner's bond being improperly increased and petitioner being improperly detained for almost two (2) years prior to the entry of his guilty plea;

2.    The state prosecutor violated petitioner's right to due process and *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose the following exculpatory evidence:

    a.    the complaint report initiating the April 2010 CPS medical neglect investigation;

    b.    an August or September 2010 physical exam form completed for A.P. and submitted to the school district for participation in public school extracurricular activities; and

    c.    counseling reports generated by CPS as a result of the April 2010 medical neglect investigation;

3.    Petitioner's state habeas corpus proceedings were defective and inadequate to provide him a full and fair opportunity to develop the evidence and present his claims to the Texas Court of Criminal Appeals because of the vagueness of Texas Rule of Appellate Procedure 73.4(b)(2); and

4.    Petitioner's pleas of guilty to the charges of aggravated sexual assault and sexual assault were involuntary due to defense counsel:

    a.    failing to convey an earlier 15-year plea offer;

    b.    misadvising petitioner as to the whether the cases could be severed so as to prevent the DNA paternity evidence obtained in the sexual assault case from being considered in the aggravated sexual assault case; and

    c.    coercing petitioner's plea by repeatedly postponing trial of the case in direct disregard of petitioner's wishes because petitioner's father, the payor of counsel's legal fees, instructed counsel to avoid a taking petitioner's case to trial.

III.
RESPONSIVE PLEADINGS

On December 12, 2017, respondent filed a Preliminary Answer asserting petitioner's first,

second, and fourth grounds should be dismissed as time barred. [ECF 25]. In her Preliminary Answer, respondent fully and accurately briefed statutory and case law regarding the 1-year statute of limitations in federal habeas corpus cases and specifically addressed petitioner's potential claim of a later discovery date as the beginning of the statute of limitations with regard to petitioner's *Brady* claims under Ground 2 and involuntary plea claim under Ground 4. [*Id*. at 5-8]. Noting petitioner did not argue, in his habeas application or supporting memorandum, that equitable tolling of the limitation period applied to his case, respondent nonetheless also fully and accurately briefed statutory and case law regarding equitable tolling. [*Id*. at 8-10]. Respondent also set forth relevant dates in this case and analyzed the timeliness of petitioner's habeas application. With regard to Ground 3 in petitioner's application, respondent asserted such a claim is not cognizable in a federal habeas corpus proceeding. [ECF 8].

On January 8, 2018, petitioner filed a reply opposing respondent's Preliminary Answer and arguing his federal habeas petition is timely for a variety of reasons and, even if not timely, he is actually innocent of the aggravated sexual assault offense in Cause No. 62,375-A (but not of the sexual assault offense in Cause No. 67,654-A) thereby creating a gateway through which this Court may consider the merits of his time-barred claims in that case. [ECF 29].

Respondent did not file a sur-reply to petitioner's reply.

## IV.
## GROUND 3 NOT COGNIZABLE

By his third ground, petitioner asserts his state habeas corpus proceedings were defective and inadequate because "[a]n unconstitutional state post-conviction statute led to a defective fact-finding process." [ECF 3 at 7]. Specifically, petitioner appears to argue that Rule 73.4(b)(2) of the Texas Rules of Appellate Procedure concerning the transmission of the habeas record to the

TCCA is "too vague and subject to arbitrary enforcement by the government."[3]  Petitioner appears to be complaining of the district clerk's 35-day delayed transmission of the supplemental record containing his "Reply in Opposition" or objections to the state trial court's findings of fact and conclusions of law to the TCCA.  The TCCA denied both of petitioner's state habeas applications based on the findings of the trial court two days after that court's receipt of the supplemental record.[4]

Petitioner's claim challenging the state habeas proceedings, in particular a state procedural rule for state habeas proceedings, is not cognizable in a federal habeas corpus proceeding. Infirmities in state habeas corpus proceedings do not constitute grounds for federal habeas relief. *Vail v. Procunier*, 747 F.2d 277 (5th Cir. 1984).  Consequently, petitioner's third ground must be denied.

## V.
## STATUTE OF LIMITATIONS

Title 28 U.S.C § 2244(d) imposes a one-year statute of limitations on federal petitions for writs of habeas corpus filed by state prisoners:

(1)    A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitations period shall run from the latest of –

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United

---

[3]Rule 73.4(b)(2) states: "When findings of fact and conclusions of law are made, a copy of those findings and conclusions shall immediately be sent to all parties in the case.  A party has ten days from the date he receives the findings to file objections, but the trial court may, nevertheless, transmit the record to the Court of Criminal Appeals before the expiration of the ten days."

[4]On March 21, 2017, the state trial court entered its findings and conclusions.  On March 31, 2017, ten (10) days after the entry of the findings and conclusions, the district clerk transmitted the supplemental record containing the trial court's findings and conclusions to the TCCA.  On that same day, March 31, 2017, petitioner mailed his "Reply in Opposition" to the trial court. The TCCA received the first supplemental record on April 3, 2017.  The trial court received petitioner's "Reply in Opposition" on April 5, 2017.  On May 10, 2017, thirty-five days later, the district clerk transmitted the second supplemental record to the TCCA, such record being received on May 15, 2017.  The TCCA denied petitioner's state habeas application two (2) days later on May 17, 2017.

States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

28 U.S.C. § 2244(d)(1)-(2).


VI.
FINALITY OF CONVICTION

By responding to Question 26 in his form habeas application, petitioner effectively acknowledges his judgments of conviction "became final over one year" before filing the instant federal habeas petition. [ECF 3 at 9]. However, in his reply to *Respondent's Preliminary Answer*, petitioner argues his conviction did not become final until May 3, 2016, when the state district court denied his April 25, 2016 *Motion for Out-of-Time Appeal*. Specifically, petitioner argues his time to file an appeal of his convictions did not expire until the trial court entered its denial of his request to file a late appeal. Petitioner's argument is without merit.

The undersigned initially notes petitioner pleaded guilty and waived his right to appeal pursuant to a plea bargain with sentence recommendations. The record indicates the trial court found petitioner was mentally competent, that his plea was voluntary, and that the evidence supported petitioner's plea of guilty of the charged offenses. [ECF 26-14 at 219; 27-10 at 134]. Moreover, the trial court followed the plea bargain agreement entered into between petitioner and the State in assessing punishment. The record does not reflect that the trial court certified

petitioner's right to appeal or otherwise consented to petitioner seeking an appeal of his convictions and sentences. Consequently, it appears petitioner did not have a right to appeal and that it is improbable that an appellate court would have heard any appeal petitioner attempted to file. *See Chavez v. State*, 183 S.W.3d 675 (Tex.Crim.App. 2006); Tex. Code Crim. Proc. art. 44.02 (2015); Tex. R. App. P. 25.2(a)(2) (2015).

Moreover, petitioner did not take any of the required steps to pursue either a timely appeal or an out-of-time appeal. Under Texas law, notice of appeal must be filed within thirty days of the date punishment is pronounced or, if a motion for new trial is timely filed, within ninety days of the date punishment is assessed. Tex. R. App. P. 41(b)(1). An extension of time to file notice of appeal may be granted *by the court of appeals* if the notice is filed within fifteen days of the last day for filing notice of appeal and within the same period a motion is filed in the court of appeals reasonably explaining the need for the extension. Tex. R. App. P. 41(b)(2); *Olivo v. State*, 918 S.W.2d 519, 522 (Tex.Crim.App. 1996). If these prerequisite requirements are not timely met, the appellate court is not vested with jurisdiction and the underlying conviction becomes final. After the expiration of the above time periods, an out-of-time appeal from a final felony conviction may be sought by filing a writ of habeas corpus pursuant to article 11.07 of the Texas Code of Criminal Procedure. *See Ater v. Eighth Court of Appeals*, 802 S.W.2d 241 (Tex.Crim.App. 1991).

Petitioner did not comply with any of the above state law procedural requirements. His *Motion for an Out-of-Time Appeal*, filed with the *trial court* almost a year after the pronouncement of his sentences, was improper and was denied by the trial court for want of jurisdiction. In his state habeas applications, petitioner did not request permission from the TCCA to file an out-of-time appeal. In fact, petitioner suggested his *Motion for an Out-of-Time Appeal* filed with the trial court was intended as an "extraordinary writ" and opined that a direct appeal raising the grounds he was therein asserting would not be appropriate because any supporting facts would be outside

the appellate record.  [ECF 27-11 at 25-26].  By his failure to comply with state law, petitioner's ability to appeal his convictions, if any, was foreclosed.  The filing and/or pendency of petitioner's untimely and improper motion with the trial court did not affect the finality of petitioner's convictions under state law.

Even so, it is federal law that determines the time limits for filing a federal habeas corpus application.  *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2002).  Under 28 U.S.C. § 2244(d)(1)(A), the limitation period runs from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.  If actions of the defendant stop the appeal process, the conviction becomes final when the time for seeking further direct review in the state court expires.  *Id.* at 694.  Under this federal standard for finality, petitioner was unable to pursue further direct review when the time for seeking an appeal expired.  Consequently, petitioner's inappropriate and untimely motion to file an out-of-time appeal did not operate to postpone the finality of petitioner's judgment of conviction under federal law.

With regard to the finality of petitioner's conviction, the undersigned makes the following findings and/or conclusions:

1. Petitioner was sentenced on May 7, 2015.  Petitioner did not file a direct appeal of his conviction or sentence with the appropriate state intermediate appellate court.

2. Petitioner's judgment of conviction became final on **June 8, 2015**, when the 30-day period to file a notice of appeal expired.  Tex. R. App. P. 26.2(a)(1) (the notice of appeal must be filed within 30 days after the day sentence is imposed); Tex. R. App. P. 4.1 (if the last day of the period is a Saturday, "the period extends to the end of the next day that is not a Saturday, Sunday, or legal holiday" – June 6, 2015, the last day of the period, was a Saturday).

## VII.
## START OF THE LIMITATION PERIOD/ STATUTORY TOLLING

The limitations period shall run from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review <u>unless</u> one of the

circumstances set forth in 28 U.S.C § 2244(d)(1)(B), (C), or (D) clearly applies and triggers a later begin date.  Here, in his application, petitioner appears to assert the 1-year limitation period should start on a date other than, and later than, the date his conviction became final on June 8, 2015.  Specifically, in response to Question 26 of the form habeas corpus application, petitioner asserts, in part:

> The factual predicate giving rise to applicant's claims did not become available through the exercise of due diligence until January 2016.

[ECF 3 at 9].  However, in his reply to respondent's Preliminary Answer, petitioner asserts he did not learn of this claim of an involuntary plea (Ground 4.a.) until January 2016, but contends he did not learn of one of his *Brady* violation claims (Ground 2.c.) until October 21, 2016.  From these statements, petitioner appears to argue the 1-year limitation period to collaterally challenge his state court convictions did not begin when his convictions became final; rather, he contends the limitation period did not begin until the date on which the factual predicate of certain claims presented could have been discovered through the exercise of due diligence.  *See* 28 U.S.C. § 2244(d)(1)(D).  When a petitioner alleges the limitation period begins to run on the date when a factual predicate could reasonably have been discovered under 2244(d)(1)(D), the later begin date of the period applies only to those constitutional claims supported by the later-discovered factual predicate.  *See Felder v. Varner*, 379 F.3d 113, 122 (3rd Cir. 2002).  Consequently, the undersigned will address each claim independently.

## A.  Involuntary Plea Claim

In his fourth ground, petitioner argues his pleas of guilty to the charges of aggravated sexual assault and sexual assault were involuntary due to defense counsel:

- failing to convey an earlier 15-year plea offer (4.a.)

- misadvising petitioner that the cases could not be severed for trial (4.b.)

- coercing petitioner's plea by repeatedly delaying the trial (4.c.)

Petitioner only asserts application of the discovery rule to his claim concerning counsel's purported failure to convey a 15-year plea offer from the State. Petitioner contends that after his guilty plea and sentencing on May 7, 2015, his mother and trial counsel had an argument during which counsel stated petitioner had refused to take a 15-year plea offered a year prior. Petitioner avers his mother first told him of this conversation in January 2016 and, therefore, he did not discover the factual predicate giving rise to this involuntary plea claim until that time. Petitioner appears to contend he could not, through the exercise of due diligence, have discovered the basis for this claim until that time. Petitioner contends the limitation period thus did not begin until his "discovery" of this "new evidence" in January 2016.

Even if petitioner's claim that counsel did not convey a prior plea offer may have been triggered by his receipt of the "word of mouth" information he received in January 2016, the standard for applying a later discovery date under section 2244(1)(D) is when petitioner could have, through the exercise of due diligence, discovered the facts on which his claims are based, not when he actually became aware of the facts. *Cf. In re Young*, 789 F.3d 518, 528 (5th Cir. 2015) (the limitations period begins when the petitioner through due diligence could discover the important facts, not when the petitioner recognizes their legal significance.). The purported conversation between petitioner's mother and defense counsel occurred on May 7, 2015. Consequently, the existence and substance of this purported conversation was discoverable immediately after petitioner's conviction and certainly, through the exercise of due diligence, by the time petitioner's conviction became final. Petitioner's alleged January 2016 "discovery" (when his mother purportedly first told him of this previous alleged conversation) of entirely

conclusory information[5] does not delay the begin date of the limitation period with regard to Ground 4.a.

Petitioner has not argued, much less shown, the applicability of the discovery rule in section 2244(d)(1)(D) so as to postpone the start of the limitation period to Grounds 4.b. or 4.c. Consequently, petitioner is not entitled to a begin date of the limitation period later than the date his convictions became final on June 8, 2015 with regard to Ground 4.

## B. _Brady_ Violations

In his second ground, petitioner asserts he was denied his constitutional right to due process because the State violated the _Brady_ rule by withholding and failing to disclose exculpatory evidence in its possession that would have aided the defense, specifically:

- the complaint report initiating the April 2010 CPS medical neglect investigation (2.a.)

- A.P.'s August or September 2010 physical exam for school (2.b.)

- counseling reports from the April 2010 CPS medical neglect investigation (2.c.)

With regard to Ground 2.c., petitioner argues he _could_ not have discovered the factual predicate forming the basis of this _Brady_ violation claim until, at the earliest, October 21, 2016, when his wife first told him A.P. had attended counseling sessions during the April 2010 CPS investigation for medical neglect. Petitioner contends, however, that he _did_ not discover the factual predicate of this claim until May 10, 2017, when he received these records and learned of the substance of the records. Petitioner contends that bringing this _Brady_ claim prior to _obtaining_ the April 2010 counseling session records on May 10, 2017 would have resulted in the dismissal of his claim for

---

[5]Again, during the state habeas proceedings, the State prosecutor submitted an affidavit averring she did not ever make a 15-year plea offer to petitioner and, in fact, only offered the 23-/20-year plea offer because of concern for the victim, believing petitioner's offenses were deserving of a greater sentence.

lack of proof of the claim.

Initially, the undersigned finds petitioner, crucially, offers nothing to support his allegations on the merits of this issue, other than his own bald assertions that are unsupported and unsupportable by anything else contained in the record. Petitioner has not demonstrated the substance of this evidence, that the State knew of this purported evidence, that the State was in imputed possession of such evidence but suppressed it, or that the purported evidence was material and favorable to the defense, in order to show a constitutional violation appropriate for federal habeas corpus relief. In fact, in the state habeas proceeding, the State prosecutor submitted an affidavit stating she had disclosed all of the information she had received from CPS to the defense through her open-file policy, and noted that if there was additional information CPS had not provided to the State prosecution, that petitioner, through his defense counsel, could have sought that information directly from CPS via subpoena or other means of discovery. [ECF 26-11 at 99]. By denying relief, the state habeas court implicitly credited trial counsel's statements and this Court must presume the state court's implicit credibility choice is correct. *See Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001). Consequently, as this claim cannot justify federal habeas corpus relief, any analysis of whether petitioner's discovery of this purported evidence to potentially support such a claim delayed the begin date of the limitation period would be unnecessary.

Even so, the undersigned further finds petitioner does not make any substantiated allegation as to when he "discovered" the State allegedly possessed but failed to disclose this purported evidence to him; rather, petitioner asserts only the date he was told such records exist and a date he purportedly obtained such records. Petitioner has not demonstrated section 2244(d)(1)(D) applies to this *Brady* claim, thereby providing a delayed or later begin date of the limitation period with regard to Ground 2.c.

Petitioner's "discovery" of the purported new information in October 2016 has no bearing whatsoever on his remaining allegations of wrongdoing by the State and the resulting denial of due process.  Consequently, petitioner is not entitled to a later begin date of the limitation period under section 2244(d)(1)(D) with regard to his Ground 2.a. and 2.b. claims asserting *Brady* violations.

## C.  Denial of Right to Confront Witness

Petitioner does not assert a later start date is applicable for his Ground 1 claim that he was denied his constitutional right to confront witnesses against him at the July 25, 2013 pre-trial bond hearing.  It is clear petitioner could have learned of the predicate of this claim, through the exercise of due diligence, at the time of the pre-trial bond hearing.  In fact, petitioner's counsel made an objection to the testimony on the basis of a confrontation clause violation.  Not only was this ground discoverable when it occurred, it was in fact known at the time it occurred.  Petitioner has not shown the applicability of the discovery rule in section 2244(d)(1)(D) to this ground.

## D.  Motion Intended as Writ

In his reply to the *Preliminary Answer*, petitioner argues Grounds 1, 2 and 4 are timely because they were raised in his April 2016 *Motion for Out-of-Time Appeal* filed with the trial court. Based on a reading of additional pleadings, the Court construes this argument as petitioner possibly asserting he intended the motion be filed as an "extraordinary writ."  Petitioner appears to argue his claims were thus properly and timely before the state courts on or about April 25, 2016.  The undersigned liberally construes petitioner's claim to be that the state trial court improperly construed his pleading as a motion for an out-of-time appeal, as it was titled, rather than as a state habeas application, and that this Court should now construe his pleading as such and afford petitioner statutory tolling from on or about April 25, 2016 to a date uncertain.

This argument may be yet another improper assertion in a federal habeas proceeding of an infirmity that existed in the state habeas corpus proceedings. Regardless, this Court will not step in at this juncture and re-classify petitioner's previous state court pleadings as substantively different actions, especially when petitioner did not raise any objection at the time. Petitioner's motion was not filed as or treated as a state habeas application, nor was it forwarded to the TCCA for determination. This Court will not re-write the procedural history of this case to allow for statutory tolling prior to the filing of petitioner's state habeas applications on September 22, 2016.

## E.  Findings and Conclusions

With regard to the start of the 1-year limitation period, the undersigned makes the following findings and conclusions:

1.   The record does not reflect any unconstitutional "State action" impeded or prevented petitioner from filing for federal habeas corpus relief.

2.   Petitioner's claims do not concern a constitutional right recognized by the United States Supreme Court within the last year and made retroactive to cases on collateral review.

3.   Petitioner's claims are not of such a nature that the factual predicate of the claims presented could not have been discovered, through the exercise of due diligence, until a date subsequent to the conclusion of petitioner's direct review of his conviction.

4.   The 1-year period of limitation in this case began on the date on which petitioner's judgment became final by the expiration of the time for seeking direct review under 28 U.S.C. § 2244(d)(1)(A), that is **June 8, 2015**.

5.   Petitioner's federal habeas corpus petition was thus due on or before **June 8, 2016**, unless statutorily or equitably tolled.

6.   Petitioner's state habeas applications challenging his convictions and sentences, filed September 22, 2016, were filed after the limitation period had expired on June 8, 2016. Consequently, the 1-year statute of limitations was not statutorily tolled. *Medley v. Thaler*, 660 F.3d 833, 834-35 (5th Cir. 2011).

VIII.
EQUITABLE TOLLING

The one-year statute of limitations on petitions for federal habeas relief by state prisoners is subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). In his reply to the Preliminary Answer, petitioner asserts his claim under Ground Three, *i.e.*, that an unconstitutional statute rendered petitioner's state habeas proceedings defective because the TCCA did not receive petitioner's objections to the state trial court's factual findings and legal conclusions until just before it entered its decision, is timely because the limitation period should be equitably tolled due to the vagueness of the challenged statute. As petitioner's claim is not cognizable in a federal habeas proceeding, the undersigned will not address the timeliness of his claim.

To the extent petitioner has asserted throughout his voluminous pleadings that he has acted with "due diligence" in filing his federal habeas corpus application collaterally challenging his state convictions and sentences, the undersigned liberally construes such comments as an assertion that he is entitled to equitable tolling of the limitation period. However, petitioner does not specifically identify any time period he contends should be equitably tolled with regard to his three (3) remaining claims. The only possible time period the undersigned can reasonably infer petitioner may be arguing could be equitably tolled is the period while petitioner's *pro se* motion to file an out-of-time appeal was pending, *to wit:* April 25, 2016 to May 3, 2016.

Although the limitation period for federal habeas relief is subject to equitable tolling, a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his habeas rights diligently, and (2) that some "extraordinary circumstance" stood in his way and prevented him from effecting a timely filing. *Id*. at 649. The United States Supreme Court has reaffirmed "that the second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee Indian Tribe of Wis.*

*v. United States*, 577 U.S. ___, 136 S. Ct. 750, 755 (2016) (emphasis original).  Equitable tolling can apply to the one-year limitation period of section 2244(d) only in "rare and exceptional" circumstances.  *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998).  The diligence required for equitable tolling purposes is "reasonable diligence," not "maximum feasible diligence." *Holland*, 560 U.S. at 653.  Equitable tolling principally applies where the petitioner is "actively misled" by the respondent about the cause of action or was prevented in some extraordinary way from asserting his rights.  *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999).  A "garden variety claim of excusable neglect" by the petitioner does not support equitable tolling. *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002).

Here, the undersigned does not find the requisite rare, exceptional and extraordinary circumstances, events, actions or conditions beyond petitioner's control existed to prevent him from filing for habeas relief so as to justify equitable tolling of the limitation period.  The undersigned does not find petitioner was actively misled for the period of time his out-of-time appeal motion was pending before the state trial court.  Moreover, even if this Court were to equitably toll the period for the time period during which petitioner's improperly filed *Motion for an Out-of-Time Appeal* was pending (on or about April 25, 2016 – May 7, 2016), petitioner's federal habeas would still be untimely.  Consequently, petitioner fails to demonstrate equitable tolling of the limitation period for filing a federal petition is warranted or that he is entitled to any specific periods of equitable tolling.

## IX.
## ACTUAL INNOCENCE

A credible showing of "actual innocence" may allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief.  *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1931 (2013).  Here, in his reply to the Preliminary Answer, petitioner

simply and conclusively states Ground Two (asserting the State prosecutor committed a *Brady* violation) "is an actual innocence claim, timely through the gateway actual innocence exception." Specifically, petitioner asserts his *Brady* claim "shows a U.S. Constitution violation led to the conviction of an innocent defendant in trial Cause No. 62,375-A," the *aggravated* sexual assault case. In particular, petitioner contends the counseling sessions from the April 2010 CPS medical neglect investigation were "the principal evidence proving petitioner's innocence in Cause No. 62,375-A." [ECF 29 at 4-5]. Petitioner thus appears to assert he can establish an actual innocence gateway for this Court to consider the merits of his time-barred claim under Ground 2.c. with regard to only his *aggravated* sexual assault conviction.

The "rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id.* (*quoting Herrera v. Collins*, 506 U.S.390, 404, 113 S.Ct. 853 (1993)). A habeas petitioner who seeks to surmount a procedural default through a showing of "actual innocence" must support his allegations with "new, reliable evidence" that was not presented in the underlying proceedings and must show that it was more likely than not that, in light of the new evidence, no fact finder, acting reasonably, would have found the petitioner guilty beyond a reasonable doubt. *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995*); see also House v. Bell*, 547 U.S. 518 (2006) (discussing at length the evidence presented by the petitioner in support of an actual-innocence exception to the doctrine of procedural default). "Actual innocence" in this context refers to <u>factual</u> innocence and not mere legal sufficiency. *Bousely v. United States*, 523 U.S. 614, 623-24 (1998).

Here, the Court has before it the unusual circumstance of a petitioner arguing he is factually innocent of only one of two convictions, for two different offenses occurring within the same criminal episode and for which different, but similar in length, sentences were assessed. Even

Even more unusual, petitioner argues he is factually innocent of committing the *aggravated* sexual assault offense of which he was convicted and thus is entitled to an exception to the procedural time bar, but with regard to only one claim.  Based on the sum of his pleadings, petitioner appears to argue counseling reports made prior to the September 2010 sexual assault allegations would discredit A.P.'s subsequent claim that sexual contact occurred between petitioner and the victim in August 2010, just prior to the start of the 2010 school year.

With his reply to the *Preliminary Answer*, petitioner did not provide any "new, reliable evidence" of his <u>factual</u> innocence of his sexually assaulting A.P. when she was 12-years-old.  The undersigned notes that even providing the counseling reports at issue that may have been inconsistent with the victim's later accusations of sexual assault during that time frame would not demonstrate petitioner's actual innocence of the offense.  After filing his reply, petitioner submitted to the Court an August 10, 2018 affidavit from A.P. wherein she reasserts the truthfulness of her prior October 4, 2010 statement recanting her previous statements to CPS and the examining nurse and denying sexual activity with petitioner prior to October 4, 2010.  A.P. averred she would give live testimony to this effect, if necessary, and expressed her belief that "it would be in everyone's best interest" for petitioner to be released from prison as soon as possible. [ECF 36 at 2].  This affidavit does not constitute "new" evidence of factual innocence; rather, just a reassertion of evidence already existing at the time of petitioner's underlying criminal proceedings.  Petitioner has not adequately or properly demonstrated an "actual innocence" exception is applicable nor shown he is actually innocent of sexually assaulting A.P. when she was younger than 14 years of age by presenting new reliable evidence not previously presented showing it is more likely than not that no reasonable juror would have convicted petitioner in light of new evidence.

## X.
## FINAL FINDINGS AND CONCLUSIONS

The undersigned makes the following findings and conclusions:

1.    Petitioner has not demonstrated he is entitled to any periods of equitable tolling.  The one-year statutory limitation period was not equitably tolled.

2.    Petitioner's federal habeas corpus application, filed **August 29, 2017** when petitioner purportedly placed the application in the prison mail system, was filed **after** the expiration of the statute of limitations and **is time barred**.

3.    Petitioner has not shown a true actual innocence exception to the time bar, nor demonstrated his actual innocence by presenting new reliable evidence not previously presented showing it is more likely than not that no reasonable juror would have convicted petitioner in light of the new evidence.  An "actual innocence" exception to the time bar is not applicable to this case.

## XI.
## RECOMMENDATION

For the above reasons and the reasons set forth in respondent's Preliminary Answer filed December 12, 2017 [ECF 25], it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by petitioner CURTIS JAMES McGUIRE be DENIED as time barred.

## XII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED August 5, 2020.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).

HAB54/FCR/McGUIRE-171.NOAPP-ET:2